```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                    CHARLOTTE DIVISION
                    3:06CV491-02-MU
                    (3:03CR135-1-MU)
```

MARK ALLEN PORRECA,            )
    Petitioner,           )
                           )
    v.                     )            **O R D E R**
                           )
UNITED STATES OF AMERICA,      )
    Respondent.           )
_____)

**THIS MATTER** is before this Court upon an initial review of the petitioner's "Motion To Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255, filed December 4, 2006. For the reasons stated herein, the petitioner's Motion to Vacate will be summarily <u>denied</u> and <u>dismissed</u>.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on June 28, 2004, a twenty-five count Superceding Bill of Indictment was filed, charging the petitioner (and his former spouse) with numerous offenses relating to fraudulent activities which yielded hundreds of thousands of dollars in proceeds. The relevant charges were conspiracy to commit wire fraud, in violation of 18 U.S.C. §§371 and 1341 (Count One); multiple acts of mail fraud, all in violation of 18 U.S.C. §§1341 and 2 (Counts Two through

Eight); conspiracy to launder money, in violation of 18 U.S.C. §§ 1956(h) and 2 (Count Nine); and three instances of money laundering, in violation of 18 U.S.C. §1957 (Counts Ten through Twelve).

After obtaining several continuances, on September 15, 2004, the petitioner appeared in Court with his Court-appointed counsel and entered straight-up guilty pleas to the foregoing charges. On that occasion, the Court engaged the petitioner in its standard lengthy Plea & Rule 11 colloquy to ensure that his guilty pleas were being knowingly and voluntarily tendered.

More particularly, the Court asked the petitioner numerous questions, in response to which the petitioner swore that he had received a copy of the Indictment and had been given a sufficient amount of time to discuss the charges and defenses with defense counsel; that after having consulted with counsel, he understood the charges which he was facing and the corresponding penalties as they were explained by counsel and the Court; that he understood his right to plead "not guilty" and proceed to a trial on those matters; and that he understood how the Sentencing Guidelines might apply to his case.

In addition, the petitioner also swore to the Court that no one had threatened or intimidated him, or made him any promises of leniency in order to induce his guilty pleas; that he was entering his pleas because he, in fact, was guilty of the subject

offenses; and that he was satisfied with the services of his counsel, even indicating that counsel's performance had been "very good."

For its part, the government advised that at the conclusion of the case, it would dismiss any remaining charges which were pending against the petitioner. Consequently, after considering all of the petitioner's answers to its questions, the Court determined that his guilty pleas were freely and voluntarily made and should be accepted.

On October 13, 2004, newly retained counsel entered an appearance for the petitioner, and proceeded to obtain several continuances of his sentencing proceeding. However, on September 22, 2005, another attorney sought and obtained permission from the Court to represent the petitioner. Then, on November 30, 2005, the petitioner's newest attorney filed a Motion to Withdraw Guilty Pleas. By that Motion, counsel represented that the petitioner's guilty pleas had been induced by erroneous legal advice concerning how certain sentencing calculations would be made.

Nevertheless, prior to the time that the scheduled hearing for the Motion to Withdraw Guilty Pleas was held, that is, on December 20, 2005, the parties filed a written Plea Agreement, which Agreement also expressly withdrew the petitioner's Motion to Withdraw Guilty Pleas.

3

Under the terms of the parties' Plea Agreement, the petitioner agreed to reaffirm his earlier guilty pleas to Counts One through Twelve. The parties' Agreement also contained the government's promise to seek, at the conclusion of the case, a dismissal of all of the other charges which the petitioner was facing.

In addition to those promises, the parties' Agreement set forth the petitioner's stipulation to an Offense Level of 21, and it reported his understanding that the Court would be considering the United States Sentencing Guidelines in determining his sentence. The Agreement also reported the petitioner's understanding that any sentencing estimate from any source, including defense counsel, was a prediction not a promise.

Equally critically, the parties' Agreement reported that defense counsel had fully explained the recent decision in United States v. Booker, 543 U.S. 220 (2005), and set forth the petitioner's stipulation that the Court could consider aggravating factors which had not been alleged in the Indictment or proven beyond a reasonable doubt; and that the petitioner would not attempt to invalidate his guilty pleas on the basis of any prior misunderstanding of the federal sentencing law. Furthermore, the Agreement set forth the petitioner's stipulation to the factual findings and legal applications of the Federal Sentencing Guidelines as set forth in his revised Pre-Sentence Report, and it

4

reported his consent to the Court's consideration of those matters for the purpose of finding a sufficient factual basis, and to calculate his sentence.

Last, with regard to the petitioner's post-conviction rights, the Plea Agreement reported that he and his attorney had discussed his rights to a direct appeal and to collateral review, and had determined whether there were any potentially meritorious issues which might be relevant to an appeal or a collateral motion. In light of those discussions, the petitioner agreed to waive his right to directly contest his convictions and/or the sentence he received, or to collaterally challenge his convictions or sentence on any grounds, except ineffective assistance of counsel and prosecutorial misconduct.

On January 4, 2006, the petitioner appeared before the Court for a combined Plea and Factual Basis & Sentencing Hearing. At the outset of that Hearing, the Court again questioned the petitioner in order to ensure that his guilty pleas had been freely and voluntarily made. In response to those questions, the petitioner reiterated his earlier sworn statements that he had been given a copy of the charges and had reviewed them with his attorney; that he understood the charges and corresponding penalties which he was facing including; and that such penalties included the maximum terms of five years imprisonment for Count One, 20 years imprisonment for Counts Two through Eight, 20 years

imprisonment for Count Nine, and ten years imprisonment for Counts Ten through Thirteen.

At that time, the petitioner also reaffirmed that he and his attorney had spoken about how the Sentencing Guidelines might apply to his case; that he was aware that his Plea Agreement contained a waiver of his right to directly appeal, or to contest his convictions or sentences on any ground other than ineffective assistance of counsel or prosecutorial misconduct; that by entering into that Agreement, he was withdrawing his earlier Motion to Withdraw Guilty Pleas; and that he was also waiving his right to proceed to a jury trial on his charges.

Moreover, the petitioner again swore that no one had threatened or intimidated him, or made him any promises of lenience in order to induce his guilty pleas; that he understood the Booker provision in his Plea Agreement; and that he understood his stipulation to the factual findings which were set forth in his Revised Pre-Sentence Report. The petitioner also confirmed his understanding that he was waiving his right to challenge under Booker the Court's consideration of any aggravating factors which had not been included in the Indictment; and he acknowledged his stipulation that the facts set forth in his Pre-Sentence Report would be used to provide the factual basis for his guilty pleas.

Next, in response to the Court's questions, the petitioner said that he had fully discussed his case with his attorney, and

was satisfied with counsel's services.  The petitioner also told the Court that he had no questions of his own.  Accordingly, at that point, the Court again accepted the petitioner's guilty pleas.

Thereafter, the Court found that the Pre-Sentence Report, along with the petitioner's stipulations, provided a factual basis for those pleas.  In light of that finding, the Court then entered the petitioner's guilty pleas upon the record.

At that point, the petitioner addressed the Court and simply asked for mercy on the basis of the negative impact that his incarceration would have on his family.  Notably, in contrast to the petitioner's current allegations, he did not raise a single concern about his case, his various attorneys, or any other matters related to this Motion to Vacate.

Ultimately, the Court found that the petitioner's Guidelines sentencing range was 37 to 46 months imprisonment, and imposed concurrent 37-month sentences for each of his convictions.  The Court also carefully reviewed the Pre-Sentence Report and ordered the petitioner to make restitution to his victims in the total amount of $418,222.08.

The petitioner did not directly appeal his convictions or sentences.[1]  Rather, after waiting nearly a full year, on Decem-

---

[1] Although he does not raise this as an actual claim, in his Motion to Vacate, the petitioner reports that he did not appeal his case because he "was not advised of [his] right to appeal by anyone."  However, inasmuch as that self-serving assertion flatly is contradicted by paragraph 19 of the petition-

ber 4, 2006, the petitioner filed the instant form Motion to Vacate. By this Motion, the petitioner alleges that his Sixth Amendment right to have a jury determine the amount of loss was violated as set forth under the case of Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny; and that he was subjected to ineffective assistance of counsel by virtue of an attorney's reported failure to appear on his behalf, the failure of counsel to explain his "plea agreement" to him, the failure of counsel to tell him that he "would be subject to a 'sentencing guideline range,'" and the failure of counsel to take his case to trial.

Notwithstanding the petitioner's beliefs to the contrary, however, the Court has determined that both of his claim of an Apprendi violation and his claim against counsel must be summarily rejected.

## II. ANALYSIS

1. **This Court is authorized to promptly review and dismiss any §2255 motion which does not contain a claim that entitles the petitioner to relief**.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether

---

er's signed Plea Agreement and by the sworn statements which he made during his Plea Hearing, the Court does not believe that such assertion warrants any further discussion.

the petitioner is entitled to any relief on the claims set forth therein. In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court has reviewed the petitioner's Motion to Vacate and the pertinent record evidence. As hereafter explained, such review clearly establishes that the petitioner is not entitled to any relief on his claims.

### 2. **The petitioner's Apprendi claim is not cognizable in this collateral proceding**.

As has been noted, the petitioner alleges that his Sixth Amendment rights were violated when the Court failed to follow the Apprendi decision by using the Sentencing Guidelines to calculate his sentence instead of allowing a jury to make that determination. However, this claim need not long detain the Court as it is entirely foreclosed by relevant legal principles and by the record evidence in this case.

In the first instance, it now is abundantly clear that the rule announced in Apprendi, and further established by its progeny--Blakely[2] and Booker/ Fanfan--is not applicable in

---

[2]In Blakely v. Washington, 542 U.S. 296 (2004), the Court held that for Apprendi purposes, the statutory maximum term is the "maximum sentence the judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." In United States v. Booker/Fanfan, 543 U.S. 220 (2005), the Court held, in part, that the rule announced in Blakely is applicable to federal defendants who are sentenced under the U.S. Sentencing Guidelines.

9

collateral proceedings such as these. See United States v. Sanders, 247 F.3d 139 (4th Cir.) (holding that Apprendi is not retroactively applicable to cases which are before the Court on collateral review), cert. denied, 534 U.S. 1032 (2001); and United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005) (holding that Booker also is not retroactively applicable on collateral review). See also United States v. Fowler, No. 05-6493, slip op. at 1 (W.Va. June 17, 2005) (holding that "neither Booker nor Blakely announce a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.").

Plainly stated, then, the petitioner is not entitled to raise his Apprendi-based claim in the instant Motion to Vacate.

In the second instance, pursuant to the terms of his written Plea Agreement, the petitioner expressly waived his right to a jury determination of his sentence and the amount of loss for which he was to be held accountable. Indeed, as was noted, under his Agreement the petitioner expressly "stipulate[d]" to an Offense Level of 21, and he "agree[d]" that the Court could rely upon "the factual findings and legal applications of the Federal Sentencing Guidelines . . . as those matters were set forth in his revised Pre-Sentence Report" in order to calculate his sentence and restitution.

Thus, inasmuch as the petitioner has waived his right to raise this claim, and his sentence and restitution were calcula-

ted in accordance with the terms of his wholly valid Plea Agreement, this claim must be flatly rejected.

### 3. **The petitioner's allegations against counsel also must fail**.

By his other claim, the petitioner alleges that counsel was ineffective in four distinct ways. However, under even minimal scrutiny, it is clear to the Court that those allegations do not entitle the petitioner to any relief.

Indeed, with respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the per-

11

formance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id.</u>, <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).

Most importantly, a petitioner who alleges ineffective assistance following entry of a guilty plea has an even <u>higher</u> burden to meet. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. at 53-59; <u>Fields</u>, 956 F.2d at 1294-99; <u>and</u> <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir.), <u>cert. denied</u>, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

<u>Hooper</u>, 845 F.2d at 475 (emphasis added); <u>accord</u> <u>Hill v. Lock-</u>

12

hart, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

At the outset of its analysis of this claim, the Court notes that other than mentioning the matter as an applicable standard for his claim, the petitioner does not state or even hint that but for his counsels' alleged errors he would have insisted upon going to trial. Thus, the petitioner's claims against counsel are subject to dismissal on that ground alone.

Concerning the substance of his allegations, the petitioner first claims that although he had retained an attorney in California to represent him in these proceedings, such attorney was ineffective because he never came to North Carolina to "appear[] on behalf of the petitioner." However, this Court has no record of any California attorney having been involved with this case.

On the other hand, the Court's records do reflect that the petitioner had one attorney appointed for him, and such attorney appeared on his behalf until the time that the petitioner's retained attorneys made appearances in his case. Therefore, this factually unsubstantiated assertion cannot possibly provide the petitioner any relief.

The petitioner next claims that one of his attorneys--presumably either Mr. Scheer, who represented him at his first Plea & Rule 11 Hearing or Mr. Tin, who negotiated the written Plea Agreement--"never explained the plea agreement to [him], therefore [he] could not have possibly understood the ramifica-

tions and related terms and conditions of the plea agreement." Suffice it to say, however, this belated, self-serving assertion flies in the face of the record evidence in this case.

To be sure, as the Court previously noted, the petitioner swore during two separate proceedings that he fully understood his verbal and written plea agreements; that he and counsel had fully discussed his case, including his charges and penalties, his possible defenses, his trial rights, and all of the rights which he was waiving by virtue of his agreements. Consequently, the petitioner's half-hearted indirect attempt to invalidate his guilty pleas at the expense of his former attorneys' reputations cannot be countenanced.

Similarly, the petitioner's claim that counsel "made promises to [him] regarding a sentence," but failed to mention that his sentence would be subject to a "'sentencing guideline range'" is entirely foreclosed by the record. That is, as was already noted, the petitioner's Plea Agreement stipulated to the Court's consideration of the Sentencing Guidelines in this case, and the petitioner reaffirmed that stipulation during his second Plea Hearing. Moreover, during his Plea Hearing, the petitioner also swore to the Court that no one had made him any promises of lenience in order to induce his guilty pleas. Therefore, the Court finds that this claim clearly is baseless.

Likewise, the Court must reject the petitioner's final claim

14

that one of his former attorneys was ineffective because he was "hired counsel to go to trial, but counsel never prepared for a trial and later coresed [sic] petitioner into entering a guilty plea." Rather, as the record reflects, the petitioner twice appeared before the Court and swore that he wanted to plead guilty to the subject charges; that he had fully discussed his case with his attorneys and that no one had coerced him into entering his guilty pleas. Therefore, the petitioner's shameless efforts to avoid the consequences of his behavior must be rejected.

### III. <u>CONCLUSION</u>

The Court's initial review of the petitioner's Motion to Vacate and the relevant record evidence conclusively show that the petitioner is not entitled to any relief on either of his claims. Therefore, Rule 4(b) of the Rules Governing Section 2255 Proceedings requires this Court to <u>dismiss</u> the instant Motion to Vacate.

### IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: December 21, 2006

Graham C. Mullen
United States District Judge